UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Civil Action No. 5:23-cv-00138-LLK

**LORI K.**                                                                                                                 **PLAINTIFF**

**v.**

**MARTIN O'MALLEY, Commissioner of Social Security**                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. [Doc. 1]. Plaintiff's supplemental brief in support of judicial review is at Doc. 20, and the Commissioner's response in opposition is at Doc. 21. The parties have consented to the jurisdiction of the Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 10].

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

### Procedural history before the Commissioner

This is the second final decision of the Commissioner to come before this Court on judicial review.

In July 2017, the first ALJ "issued a partially favorable decision finding that Plaintiff became disabled on July 26, 2017." *Karnes v. Comm'r*, No. 5:18-CV-00023-LLK, 2019 WL 438385 (W.D. Ky. Feb. 4, 2019). The first ALJ found that Plaintiff became disabled on July 26, 2017 (which the ALJ treated as Plaintiff's fifty-fifth birthday, although her actual date of birth is July 27, 1962) based on direct application of Medical-Vocational Rule 202.06 of Appendix 2 of the regulations. *Id.* However, the ALJ found that Plaintiff was not disabled between January 1, 2015 (when Plaintiff alleges that she became disabled) and July 25, 2017 (the day before the day the ALJ treated as Plaintiff's fifty-fifth birthday). *Id.*

1

In February 2019, this Court remanded this matter to the Commissioner for a new decision and reconsideration of Plaintiff's disability status between January 1, 2015, and July 25, 2017. *Id.*

In April 2023, the second ALJ issued a partially favorable decision finding that Plaintiff became disabled on December 1, 2016. [Administrative Record, Doc. 8 at 918-32]. The second ALJ found that Plaintiff became disabled on December 1, 2016 (the date on which the ALJ found that Plaintiff's RFC changed from having a maximum sustained capacity for light work to one for sedentary work) based on direct application of Medical-Vocational Rule 201.14 of Appendix 2 of the regulations. *Id.* at 928, 931. However, the ALJ found that Plaintiff was not disabled between January 1, 2015 (when Plaintiff alleges that she became disabled) and November 30, 2016 (the day before the ALJ found Plaintiff became disabled). *Id.*

The second ALJ's decision became the Commissioner's final decision (presently before the Court on judicial review) when the Appeals Council declined to disturb the second ALJ's decision.

**Procedural history before this Court**

In October 2023, Plaintiff filed a complaint seeking judicial review of the final decision of the Commissioner. [Doc. 1].

In May 2024, Plaintiff filed her brief in support of judicial review. [Doc. 16].

In May 2024, the Commissioner filed his brief in opposition. [Doc. 18].

In June 2024, the Court entered an Order for supplemental briefing, finding that Doc. 16 "fails to identify a specific argument" and "improperly invites de novo review." [Doc. 19].

In July 2024, Plaintiff filed her supplemental brief in support of judicial review. [Doc. 20].

In July 2024, the Commissioner filed his brief in opposition. [Doc. 21].

**The Commissioner's final decision**

As indicated above, the second ALJ issued the Commissioner's final decision, finding that Plaintiff was not disabled between January 1, 2015 (when Plaintiff alleges that she became disabled) and November 30, 2016 (the day before the ALJ found Plaintiff became disabled). [Doc. 8 at 918-32].

The second ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that, during the relevant period between January 1, 2015, and November 30, 2016, Plaintiff did not engage in substantial gainful activity. *Id.* at 921.

Second, the ALJ found that Plaintiff had the following severe, or vocationally significant, impairments: degenerative disc disease, depression, bipolar disorder, anxiety, and attention deficit hyperactivity disorder. *Id.*

Third, the ALJ found that Plaintiff had no impairment satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.*

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, during the relevant period between January 1, 2015, and November 30, 2016, Plaintiff could:

> … perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and/or walk for 30 minutes each at a time for 6 hours out of an 8 hour workday. She can occasionally reach overhead. She can occasionally climb ladders/ropes/scaffolds and crawl. She can frequently perform other postural activities. She should avoid moderate exposure to vibration and hazards such as unprotected heights and moving/dangerous machinery. She can perform simple, repetitive, routine tasks and frequently interact with others including coworkers, supervisors, and the general public.

*Id.* at 923.

Fourth, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 929.

Fifth, the ALJ found that Plaintiff was able to perform a significant number of unskilled, light jobs in the national economy such as inspector, bench assembler, and hand packager. *Id.* at 931.

**Plaintiff's first argument is unpersuasive.**

First, Plaintiff argues that "substantial medical evidence prior to December 1, 2016, supports at a minimum a sedentary RFC." [Doc. 20 at PageID.2253].

The ALJ found that Plaintiff had an RFC for light work between January 1, 2015 (when Plaintiff alleges that she became disabled) and November 30, 2016 (the day before the ALJ found that Plaintiff's RFC changed from light to sedentary and Grid Rule 201.14 dictated an ultimate finding of "disabled"). Plaintiff's argument is unpersuasive on its face because the issue on judicial review is not whether substantial evidence would have supported a plaintiff-favorable finding by the ALJ (e.g., that she was restricted to sedentary work) but rather whether substantial evidence supports the ALJ's actual plaintiff-unfavorable finding (e.g., that she was able to perform light work). The substantial-evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the ALJ's decision. *Id.* If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.* The Court agrees with the Commissioner that:

> In essence, Plaintiff is asking this Court to reweigh the evidence, which is impermissible. *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.")

[Doc. 21].

Nevertheless, out of an abundance of caution, the Court construes Plaintiff's argument to be that substantial evidence does not support the ALJ's finding that Plaintiff was able to perform light work between January 1, 2015, and November 30, 2016.

Plaintiff relies on the results of a "myelogram and post myelogram CT performed on May 30, 2001." [Doc. 20 at PageID.2253]. Plaintiff's reliance on the results of radiographic testing from 2001 is unpersuasive for two reasons. First, the testing was in 2001, and the relevant period is January 1, 2015,

4

through November 30, 2016. Second, "lay persons," including Plaintiff and this Court, are "simply not qualified to interpret raw medical data [e.g., results of a CT] in functional terms." *Rudd v. Comm'r*, 531 F. App'x 719, 726 (6th Cir. 2013). "The mere diagnosis of [an impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013).

Plaintiff relies on reports of pain and numbness to Drs. Arendall and Culclasure from 2001 through 2003, treatment notes from Pain Management Center from 2006 through 2010, and repeat radiographic testing on August 22, 2014. But these reports, notes, and testing lie outside the relevant period (i.e., January 1, 2015, through November 30, 2016), and Plaintiff and this Court lack the expertise to interpret them in functional terms.

Plaintiff relies on her complaints to Dr. Means on December 15, 2015, and to Dr. Manchikanti on January 13, 2016. Drs. Means and Manchikanti did not evaluate Plaintiff's RFC, and Plaintiff and this Court lack the expertise to do so. Additionally, it would be inappropriate for this Court to accept as fully credible Plaintiff's complaints. Under the guise of substantial evidence review, the Court "may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y*, 964 F.2d 524, 528 (6th Cir. 1992); *see also Dyson v. Comm'r*, 786 F. App'x 586, 588 (6th Cir. 2019) ("This [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.").

**Plaintiff's second argument is unpersuasive.**

Second, Plaintiff argues that "substantial medical evidence does not support a worsening on December 1, 2016." [Doc. 20 at PageID.2255].

The ALJ found that Plaintiff was restricted to sedentary work and disabled pursuant to Rule 201.14 of Appendix 2 of the regulations beginning on December 1, 2016, and not earlier because it was on December 1, 2016, that Plaintiff first "acknowledged her condition as worsening to her medical provider" and it was on that date that her condition had "progressed to the point of wanting to have surgery." [Doc. 8 at 929]. Plaintiff argues that, in fact, Plaintiff needed surgery earlier.

The Court does not doubt that substantial evidence would have supported a finding that Plaintiff needed surgery earlier than December 1, 2016. That is beside the point.

Plaintiff argues that her condition "supported the need for surgery in the eyes of her care team as early as 2001." [Doc. 20 at PageID.2255]. It is too late on judicial review to suggest an alleged onset of disability earlier than January 1, 2015, the date selected by Plaintiff in connection with her application for benefits.

Plaintiff discusses raw medical data and diagnoses given by Drs. Manchikanti and Davies and by Dr. Davies's advanced practice registered nurse (APRN) Fennel. [Doc. 20 at PageID.2256-58]. These medical sources did not opine that Plaintiff was restricted to sedentary work prior to December 1, 2016. To the extent Plaintiff is arguing that this Court should opine that Plaintiff was restricted to sedentary work based on the raw medical data and diagnoses, the Court is "simply not qualified to interpret raw medical data in functional terms," *Rudd*, 531 F. App'x at 726.

### Plaintiff's third argument is unpersuasive.

Third, Plaintiff argues that "the ALJ's reliance on work activity under SGA [substantial gainful activity] and daily activities is misplaced." [doc. 20 at PageID.2258]. Specifically, Plaintiff objects to the fact that, in determining that she could perform light work between January 1, 2015, and November 30, 2016, the ALJ considered her activities, including part-time waitressing and babysitting:

> The undersigned is not persuaded the claimant's records or activities support or are consistent with restrictions greater than those listed in the residual functional capacity above [for light work]. The claimant did attend pain management services, and she had degenerative changes and limited range of motion on examination. However, in January 2017, she presented to a neurosurgical specialist indicating that her condition had worsened as of December 2016, such that she wanted to proceed with surgery. Up until that time, the claimant had managed her activities of daily living and finances, albeit at her own pace. She drove. She worked part-time as a waitress. She helped with the care of a baby. (See Exs. 5E and 7E). While the claimant later testified that she did not perform household chores or drive, those reports completed closer in time to the relevant period stated that she was "very physically able to do inside chores." (Ex. 5E/4). She reported walking to counseling sessions. (Ex. 20F). In addition, medical personnel had noted that there was no clear association between the quality of her symptoms and medication usage. (Exs. 4F/7 and 9F/6). While the undersigned notes the claimant's testimony of extreme pain and difficulty performing activities, the medical records prepared at the time, as well as

6

reports prepared closer in time to the relevant period, do not support limitations greater than those outlined above.

[Doc. 8 at 925].

Once again, the issue is not whether substantial evidence would have supported a plaintiff-favorable finding by the ALJ (given a more charitable view of Plaintiff's activities) but rather whether substantial evidence supports the ALJ's actual plaintiff-unfavorable finding.

Plaintiff argues that that ALJ placed "great weight" on her part-time waitressing. [Doc. 16 at PageID.2222]. The ALJ did not place great weight on the waitressing. It was one of several factors. Contrary to Plaintiff's suggestion, the ALJ did not err in considering it. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Miller v. Comm'r*, 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").

Plaintiff argues that the "minimal activities required to watch her grandson one day a week do not equate to full time light work activity." [Doc. 16 at PagweID.2222]. The ALJ did not say or imply that the babysitting proved Plaintiff could perform light work. Again, it was one of several factors considered by the ALJ.

Plaintiff argues that an "8 minute walk to a medical provider's office cannot be equated to activity consistent with a range of full time light work activity." [Doc. 16 at PageID.2223]. The ALJ did not say or imply that the walking proved Plaintiff could perform light work.

Contrary to Plaintiff's suggestion, the ALJ was not required to identify a single factor that proved that she could perform light work prior to December 1, 2016. In determining Plaintiff's RFC, the ALJ properly considered the medical and non-medical evidence as a whole.

7

**Order**

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

July 26, 2024

Lanny King, Magistrate Judge
United States District Court